

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

TRANSBULK SHIPPING LLC,

                Plaintiff,

  - against -

POOSHESH PERSIA CO., and
SOCOTHERM SPA a/k/a SOCOTHERM
MIDDLE EAST,

                Defendants.

-------------------------------------------------------------------X

08 Civ.

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, TRANSBULK SHIPPING LLC (hereinafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendants, POOSHESH PERSIA CO. (hereinafter referred to as "PPC") and SOCOTHERM SpA a/k/a SOCOTHERM MIDDLE EAST (hereinafter referred to as "Socotherm") alleges, upon information and belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Dubai, UAE.

3.     Upon information and belief, Defendant PPC was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with a principal place of business in Tehran, Iran.

4.     Upon information and belief, Defendant Socotherm was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with places of business in Italy and Qatar.

5.     By a charter party entered into on July 23, 2007 on the GENCON 94 charter party form, Plaintiff chartered to Defendant PPC the M/V OCEAN FRONTIER for a carriage of iron ore from one safe port and berth in Bandar Abbas, Iran to one safe port and berth in Qatar. Pursuant to the charter party, demurrage, *i.e.*, liquidated damages for vessel delays incurred at the load and/or discharge port, was $17,000.00 per day or prorata. *See charter party attached as Exhibit 1.*

6.     In the performance of the aforesaid voyage, there accrued charges for demurrage for the Vessel. In breach of the charter party Defendant PPC failed to pay demurrage owing to Plaintiff despite due demand.

7.     Specifically, as reflected in the Demurrage Invoice dated September 11, 2007, Defendant PPC has illegally withheld payment of $129,070.14 which is owed to Plaintiff. Demurrage was incurred as a result of a delay of three days, sixteen hours and fifty-six minutes at the load port and a delay of three days, twenty-one hours and seventeen minutes at the discharge port. *See Demurrage Invoice attached as Exhibit 2.* Defendant PPC has not paid the outstanding demurrage owed to Plaintiff despite its duty to do so.

2

8.    Pursuant to the charter party, all disputes were to be submitted to arbitration in London with English Law to apply. Plaintiff is preparing to commence arbitration against Defendant PPC in London.

9.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts in the London arbitration:

| | | |
|---|---|---|
| A. | Principal claim: | $129,070.14; |
| B. | Interest on principal claim at 7% compounded quarterly for two years: | $19,216.19; |
| C. | Attorneys' fees and costs of arbitration: | $70,000.00; |
| **Total:** | | **$218,286.33.** |

10.    Defendant Socotherm is a receiving/paying agent of PPC such that Socotherm is now, or will soon be, holding assets belonging to PPC, or vice versa. In the course of the charter party between Plaintiff and PPC, Socotherm made a freight payment to Plaintiff in the amount of $380,000.00 notwithstanding that Socotherm was not a party to the charter party contract. *See copy of Socotherm's Payment Remittance to Plaintiff attached as Exhibit 3.*

11.    Upon information and belief, PPC uses Socotherm as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its contracts.

12.    It is not general practice in the maritime community, nor anywhere else, for independent companies to make or receive large payments on behalf of other independent companies.

13.    Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

14.    Upon information and belief, Socotherm sends payments and/or is directed to send payments on PPC's behalf where Socotherm has absolutely no contractual relationship and/or debt to PPC's creditors.

15.    In the further alternative, Defendants PPC and Socotherm are partners and/or joint venturers.

16.    In the further alternative, Defendants are affiliated companies such that Socotherm is now, or will soon be, holding assets belonging to PPC, or vice versa.

17.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

18.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That the Court retain jurisdiction to compel the Defendant PPC to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.     That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendants, in the amount of **$218,286.33** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court.

E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

G.     That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: January 11, 2008
      New York, NY

          The Plaintiff,
          TRANSBULK SHIPPING LLC,

By:                                     
          Charles E. Murphy
          LENNON, MURPHY & LENNON, LLC
          The GrayBar Building
          420 Lexington Ave., Suite 300
          New York, NY 10170
          (212) 490-6050 – phone
          (212) 490-6070 – fax
          cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    New York City
County of New York   )

1.      My name is Charles E. Murphy.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:        January 11, 2008
              New York, NY

                            Charles E. Murphy

7

Exhibit 1

First Original

| 1.Shipbroker<br>SUROOD MARINE SERVICES.<br>P.O. BOX, 32547 DUBAI, U.A.E.<br>TEL : + 971-4-3965640<br>FAX : + 971-4-3965437<br>EMAIL : burod3@emirates.net.ae | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>(To be used for trades for which no specially approved form is in force)<br>CODE NAME: "GENCON" |
|---|---|
| | 2. Place and date<br>TEHRAN – IRAN /23rd JULY , 2007 |
| 3. Owners/Place of business (Cl. 1)<br>TRANSBULK SHIPPING LLC DUBAI<br>P.O. BOX 111553 DUBAI<br>TEL : 00 9714 3315160<br>FAX : 00 9714 3315170 | 4. Charterers/Place of business (Cl. 1) POOSHESH PERSIA CO.<br>4TH Floor, 434, ARAK St. OSTAD MOAYYOLARI Ave.<br>ZIP CODE: 1599340515 TEHRAN – IRAN<br>TEL: +98 21 84049114-5FAX: + 98 21 84905218<br>E-MAIL: j.bushehrdust@services.info & theengg.tech@gmail.com |
| 5. Vessel's name (Cl. 1)<br>M/V. Ocean Frontier | 6. GRT (Cl. 1) 16,260 / 6,347 |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl. 1)<br>22,034MTS ON 10.11M DRAFT SSW SEE CL. 41 | 8. Present position (Cl. 1)<br>Trading |
| 9. Expected ready to load (Cl. 1)<br>29th July 2007 | |
| 10. Loading port or place (Cl. 1)<br>ONE SAFE PORT ONE SAFE BERTH BANDAR ABBAS – IRAN | 11. Discharging port or place (Cl. 1)<br>ONE SAFE PORT TWO SAFE BERTHS MESAIEED - QATAR |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl. 1)<br><br>20,000 MTS OF IRON ORE FINE 5% MOLOO AS SOLE CARGO. | | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery) (Cl. 4)<br>USD 15.50 PER METRIC TON<br>SEE CLAUSE 36 | 14. Freight payment (state currency and method of payment; also beneficiary and<br>bank account) (Cl. 4)<br><br>SEE CLAUSE 36 |
| 15. State if vessel's cargo handling gear shall not be used (Cl. 5)<br>See cl. 41 | 16. Laytime (if separate laytime for load. and disch. is agreed, fill in a) and b). If<br>total laytime for load. and disch., fill in c) only) (Cl. 6) |
| 17. Shippers/Place of business (Cl. 6)<br>SAME AS CHARTERERS | a) Laytime for loading<br>SEE CLAUSE 21 & 22 |
| 18. Agents (loading) (Cl. 6)<br>M/S Blue Gulf Shipping Agency.       SEE CL. 46 | b) Laytime for discharging<br>SEE CLAUSE 29 & 30 |
| 19. Agents (discharging) (Cl. 6)<br>GULF AGENCY CO – QATAR CL. 46 | c) Total laytime for loading and discharging<br>N/A |
| 20. Demurrage rate and manner payable (loading and discharging) (Cl. 7)<br>USD 17,000 PER DAY OR PRORATA / HALF DESPATCH FOR<br>ALL WORKING TIME SAVED AT BOTH ENDS<br><br>SEE CL. 31 | 21. Cancelling date (Cl. 9)<br>3rd August 2007 SEE CL. 9 |
| | 22. General Average to be adjusted at (Cl. 12)<br>IN LONDON AND ENGLISH LAW TO BE APPLIED |
| 23. Freight Tax (state if for the Owners' account) (Cl. 13(c))<br>See Clause 26 ' | 24. Brokerage commission and to whom payable (Cl. 15)<br>N/A |
| 25. Law and Arbitration (state (a), 19(b) or 19(c) of agreed;<br>also state Place of Arbitration) (if not filled in 19 (c) shall apply) (Cl. 19)<br>IN LONDON AND ENGLISH LAW TO BE APPLIED<br>SEE CLAUSE 19-A | SEE CL. 82 |
| (a) State maximum amount for small claims/shortened arbitration (Cl. 19)<br>USD 50 000 | 26. Additional clauses covering special provisions, if agreed<br>CLAUSES 20 TO 82 WHICH ARE INCORPORATED TO THIS C/P. |

It is mutually agreed that this contract shall be performed subject to the conditions contained in this Charter Party which shall include Part I as well as Part II. In the event
of a conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners)<br>FOR AND ON BEHALF OF | Signature (Charterers)<br>FOR AND ON BEHALF OF<br><br>R. A. Bushehrdust |
|---|---|
| <br><br>TRANSBULK SHIPPING LLC DUBAI | <br><br>POOSHESH PERSIA CO |



POOSHESH
PERSIA Co

PART II
"Gencon" Charter (As Revised 1922, 1976 and 1994)



2

Such option must be declared by the Charterers within 24 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option hereinbefore, then the Charter Party shall be deemed to be amended such that the earliest day of the commencement date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions set out above (a) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. Bills of Lading Cl. 24, 32, 39, 43 & 48
Bills of Lading shall be presented and signed by the master as per congon bill of lading form ... within 1954, without prejudice to this Charter Party, or by the Owners' agents provided within authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all loss or damage or consequences-liabilities that may arise from the signing of Bills of Lading as presented to the extent that the terms or contents of such Bills of Lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. Both-to-Blame Collision Clause
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners. The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. General Average and New Jason Clause
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York-Antwerp Rules 1994 and any subsequent modification thereof. Regulation of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).
If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery."

13. Taxes and Dues Clause SEE CL. 26
(a) On Vessel—The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.
(b) On cargo—The Charterers shall pay all dues, charges and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.
(c) On freight—Unless otherwise agreed in Box 23, taxes levied on the freight shall be for the Charterers' account.

14. Agency SEE CL. 43
In every case the Owners shall appoint their own Agent both at the port of loading and the port of discharge.

15. Brokerage SEE CL. 52
A brokerage commission at the rate stated in Box 24 on the freight, dead freight and demurrage earned is due to the party mentioned in Box 24.
In case of non-execution 1/3 of the brokerage on the estimated amount of freight to be paid by the party responsible for such non-execution to the Brokers as indemnity for the latter's expenses and work. In case of more voyages the amount of indemnity to be agreed.

16. General Strike Clause



(a) If there is a strike or lock-out affecting or preventing the actual loading of the cargo, or any part of it when the Vessel is ready to proceed from her last port or at any time during the voyage to the port or ports of loading or after her arrival there, the Master or the Owners may ask the Charterers to declare, that they agree to reckon the laydays as if there were no strike or lock-out. Unless the Charterers have given such declaration in writing (by telegram, if necessary) within 24 hours, the Owners shall have the option of cancelling this Charter Party. If part cargo has already been loaded, the Owners must proceed with same, (freight payable on loaded quantity only) having liberty to complete with other cargo on the way for their own account.
(b) If there is a strike or lock-out affecting or preventing the actual discharging of the cargo on or after the Vessel's arrival at or off port of discharge and same has not been settled within 48 hours, the Charterers shall have the option of keeping the Vessel waiting until such strike or lock-out is at an end against paying half demurrage after expiration of the time provided for discharging until the strike or lock-out terminates and thereafter full demurrage shall be payable until the completion of discharging, or of ordering the Vessel to a safe port where she can safely discharge without risk of being detained by strike or lock-out. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the strike or lock-out affecting the discharge. On delivery of the cargo at such port, all conditions of this Charter Party and of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance to the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.
(c) Except for the obligations described above, neither the Charterers nor the Owners shall be responsible for the consequences of any strikes or lock-outs preventing or affecting the actual loading or discharging of the cargo.

17. War Risks ("Voywar 1950")
(1) For the purpose of this Clause, the words:
(a) The "Owners" shall include the shipowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Vessel, and the Master; and
(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all Vessels or imposed selectively against Vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever which, in the reasonable judgement of the Master and/or the Owners may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.
(2) If at any time before the Vessel commences loading, it appears that, in the reasonable judgement of the Master and/or the Owners, performance of the Contract of Carriage, or any part of it, may expose, or is likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks, the Owners may give notice to the Charterers cancelling this Contract of Carriage, or may refuse to perform such part of it as may expose, or may be likely to expose, the Vessel, her cargo, crew or other persons on board the Vessel to War Risks; provided always that if this Contract of Carriage provides that loading or discharging is to take place within a range of ports, and at the port or ports nominated by the Charterers the Vessel, her cargo, crew, or other persons onboard the Vessel may be exposed, or may be likely to be exposed, to War Risks the Owners shall first require the Charterers to nominate any other safe port which lies within the range for loading or discharging, and may only cancel this Contract of Carriage if the Charterers shall not have nominated such safe port or ports within 48 hours of receipt of notice of such requirement.
(3) The Owners shall not be required to continue to load cargo for any voyage, or to sign Bills of Lading for any port or place, or to proceed or continue on any voyage, or on any part thereof, or to proceed through any canal or waterway, or to proceed to or remain at any port or place whatsoever, where it appears, either after the loading of the cargo commences or at any stage of the voyage thereafter before the discharge of the cargo is completed, that, in the reasonable judgement of the Master and/or the Owners, the Vessel, her cargo (or any part thereof), crew or other persons on board the Vessel (or any one or more of them) may be, or are likely to be, exposed to War Risks. If it should so appear, the Owners may by notice request the Charterers to nominate a safe port for the discharge of the cargo or any part thereof, and if within 48 hours of the receipt of such notice, the Charterers shall not have nominated such a port, the Owners may discharge the cargo at any safe port of their choice (including the port of loading) in complete fulfilment of the Contract of Carriage. The Owners shall be entitled to recover from the Charterers the extra expenses of such discharge and, if the discharge takes place at any port other than the loading port, to receive the full freight as though the cargo had been carried to the discharging port and if the extra distance

3


POOSHESH
PARSA Co



exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route the Owners taking a lien on the cargo for such expenses and freight.

(f) If at any stage of the voyage after the loading of the cargo commences, it appears that, in the reasonable judgement of the Master and/or the Owners the Vessel, her cargo, crew or other persons on board the Vessel may be, or are likely to be, exposed to War Risks on any part of the route (including any canal or waterway) which is normally and customarily used in a voyage of the nature contracted for, and there is another longer route to the discharging port, the Owners shall give notice to the Charterers that this route will be taken. In this event the Owners shall be entitled, if the total extra distance exceeds 100 miles, to additional freight which shall be the same percentage of the freight contracted for as the percentage which the extra distance represents to the distance of the normal and customary route.

(ii) The Vessel shall have liberty:-
(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery or in any way whatsoever which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government which so requires, or any body or group acting with the power to compel compliance with their orders or directions;
(b) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;
(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;
(d) to discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;
(e) to call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions;
(f) where cargo has not been loaded or has been discharged by the Owners under any provisions of this Clause, to load other cargo for the Owners' own benefit and carry it to any other port or ports whatsoever, whether backwards or forwards or in a contrary direction to the ordinary or customary route 310

(iii) It is compliance with any of the provisions of sub-clauses (i) to (ii) of this Clause anything is done or not done, such shall not be deemed to be a deviation but shall be considered as due fulfilment of the Contract of Carriage

18   Generalice Clause
~~PortofLoading~~
~~(a) In the event of the loading port being inaccessible by reason of the ice when the Vessel is ready to proceed from her last port or at any time during the voyage or on the Vessel's arrival or in case local ice is after the Vessel's arrival, the Master for fear of being frozen in is at liberty to leave without cargo, and this Charter Party shall be null and void.~~
~~(b) if only during loading the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to any other port or ports with option of completing cargo for the Owner's benefit for any port or ports including port of discharge. Any part cargo thus loaded under this Charter Party to be forwarded to destination at the Vessel's expense but against payment of freight, provided that no extra expenses be thereby caused to the Charterers, freight being paid on quantity delivered (in proportion if lumpsum), all other conditions as per this Charter Party.~~
~~(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or the Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for their own account as under section (b) or to declare the Charter Party null and void unless the Charterers agree to load full cargo at the open port.~~

~~Port of Discharge~~
~~(d) Should ice prevent the Vessel from reaching port of discharge the Charterers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the Vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Master or the Owners have given notice to the Charterers of the impossibility of reaching port of destination.~~
~~(e) If during discharging the Master for fear of the Vessel being frozen in deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest accessible port where she can safely discharge.~~

(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Vessel shall receive the same freight as if she had discharged at the original port of destination, except that if the distance of the substituted port exceeds 100 nautical miles, the freight on the cargo delivered at the substituted port to be increased in proportion.

19   Law and Arbitration
*(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Acts 1950 and 1979 or any statutory modification or re-enactment thereof for the time being in force. Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party and the arbitrators so appointed shall appoint a third arbitrator, the decision of the three man tribunal thus constituted or any two of them, shall be final. On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within fourteen days failing which the decision of the single arbitrator appointed shall be final.
For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25* the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.*

~~*(b) This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and should any dispute arise out of this Charter Party, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.~~
~~For disputes where the total amount claimed by either party does not exceed the amount stated in Box 25* the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc.~~
*(c) Any dispute arising out of this Charter Party shall be referred to arbitration at the place indicated in Box 25, subject to the procedures applicable there. The laws of the place indicated in Box 25 shall govern this Charter Party.
*(d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.
*(a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.
**Where no figure is supplied in Box 25 in Part I, the provision only shall be void but the other provisions of this Clause shall have full force and remain in effect.

4



POOSHESH
PERSIA Co

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

CLAUSE 20:
NOTICE ON FIXING, THEN 7/5/3/2/1 DAY PRIOR TO ARRIVAL AT LOAD PORT WITH LOADABLE QUANTITY TO BE
GIVEN TO FOLLOWING:

CHARTERERS:

M/S : 4TH Floor, #36, ARAK St.
OSTAD NEJATOLLAHI Ave
ZIP CODE: 1598944515
TEHRAN – IRAN
TEL: +98 21 88807114-5
FAX: + 98 21 88902938
E-MAIL : m.khashayardoust@persianco.info & shepposshesh@gmail.com

SHIPPERS:

SAME AS CHARTERERS

SUPPLIERS:

N/A

AGENT AT LOAD PORT:

Blue Gulf Shipping Agency
Unit # 24, 4th Flr, 2nd Block.
No. 40 Vanak Ave. Tehran 19918, Iran
Tel: +98 21 88790155 / 8879 853 Fax: 88888175

CLAUSE 21:
AT LOAD PORT:
CARGO TO BE LOADED FREE OF EXPENSES TO THE VESSEL AT THE RATE OF 1,500 METRIC TONS PER HATCH
PER WORKABLE HOOK PER WEATHER WORKING DAY OF 24 CONSECUTIVE HOURS, FRIDAY AND/OR LEGAL
HOLIDAYS INCLUDED

NOR TO BE TENDERED DURING THE AGREED LAYCAN IN WRITING AND DURING OFFICE WORKING HRS (I. E.)
0900 – 1700 HRS SATURDAY TO THURSDAY  WIPON  WIFPON, WCCON. WIBON WIPON, WIFPON, WCCON AND
WIBON

ON TENDERING NOR VESSEL S HOLD TO BE DRY , SWEPT ,CLEAN OF ANY RUST BEFORE LOADING AND TO BE
FIT / READY IN ALL RESPECTS FOR SHIPMENT OF IRON ORE IN BULK AND RECEIVING INTEND CARGO IN ALL
HOLDS

CLAUSE 22:
LAYTIME AT LOAD PORT COMMENCES TO COUNT AFTER VESSEL ARRIVED AND TENDERED WRITTEN / CABLED /
TELEXED NOTICE OF READINESS ANYTIME.
SHIPPER / RECEIVERS / CHARTERERS CAN MANGE TO LOAD / DISCHARGE BEFORE LAYTIME COMMENCES,
MASTER WILL ALLOW LOADING / DISCHARGING TO COMMENCE. AND THE HALF ACTUAL TIME WORKED PRIOR
COMMENCEMENT OF LAYTIME TO COUNT

IN CASE OF CONGESTION OR IF VESSEL IS NOT INSTRUCTED TO BERTH BY CHARTERERS / SHIPPERS / PORT
AUTHORITIES, MASTER HAS THE RIGHT TO GIVE NOTICE OF READINESS IN WRITING FROM ANCHORAGE / USUAL
WAITING PLACE, WHETHER IN PORT OR NOT, WHETHER IN BERTH OR NOT, WHETHER IN FREE PRATIQUE OR
NOT WHETHER CUSTOMS CLEARED OR NOT  PROVIDED VESSEL NOT SUBSEQUENTLY DENIED FREE PRATIQUE

LAYTIME AT BOTH ENDS NON-REVERSIBLE.

CLAUSE 23:
OWNERS SHALL SATISFY THEMSELVE FOR ANY RESTRICTIONS AT LOAD / DISCHARGE PORT

- 5 -

POOSHESH
PERSIA Co

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

CLAUSE 24:
IN CASE BILL(S) OF LADING NOT AVAILABLE AT DISCHARGING PORT ON VESSEL ARRIVAL, OWNERS AGREE TO
DISCHARGE THE CARGO AGAINST SUBMISSION OF OWNERS P AND I CLUB WORDED LETTER OF INDEMNITY
DULY SIGNED BY THE CHARTERERS ONLY

CLAUSE 25:
CARGO STOWED SHOULD BE EASILY ACCESSIBLE TO DISCHARGE STOWAGE IN DEEP TANKS AND GALLIES
NOT ALLOWED

CLAUSE 26:
A-  ALL TAXES, CHARGES AND PORT DUES ON VESSEL, / FREIGHT / FLAG AT BOTH ENDS TO BE FOR
    OWNERS ACCOUNT,
B-  ALL TAXES / DUES ON CARGO / AT LOAD AND DISCHARGE PORTS TO BE ON CHARTERERS ACCOUNT
C-  OVER AGE PRIMIUM IF ANY TO BE ON CHARTERERS ACCOUNT

CLAUSE 27:
OPENING / CLOSING OF HATCHES ORDERED BY THE CHARTERERS ALLWAYS TO BE EFFECTED BY VESSEL S
CREW AT OWNERS' EXPENSES, PROVIDED PERMITTED BY LOCAL REGULATIONS, AND TIME TO COUNT AS
LOADING / DISCHARGING TIME EXCEPT FIRST OPENING AND LAST CLOSING TIME WHICH NOT TO COUNT

CLAUSE 28:
NOTICE ON BERTHING / LOADING AT LOAT PORT, THEN 5/3/2 DAY PRIOR TO ARRIVAL AT DISCHARGE PORT WITH
LOADABLE QUANTITY TO BE GIVEN TO FOLLOWING PLUS IMMEDIATELY UPON COMPLETION OF LOADING AND
SAILING FROM LOAD PORT, MASTER TO ADVISE BY CABLE / TELEX TO CHARTERERS AND RECEIVERS, VESSEL'S
E.T.A. TO MESAIED - QATAR  WITH LOADED TONNAGE
CHARETERERS:

    MS ; 4TH Floor, N96, ARAK St
    OSTAD NEJA TOLAHI Ave
    ZIP CODE: 1594944615
    TEHRAN – IRAN
    TEL; +98 21 888891I,4-5
    FAX; + 98 21 83902938
    E-MAIL : Sm.l.basinrdoust@persico.info

RECEIVERS :

    SOCOTHERM MIDDLE EAST QATAR BRANCH
    P.O.BOX : 50204 MESSAIED STATE OF QATAR
    PH:+974 4760040 – FAX; +9744760993
    E-MAIL:RON.ARANHA@SOCOTHERM.AE & SERGIO.DITOMMASO@SOCOTHERMQATAR.COM

DISPORT AGENT: :

    GULF AGENCY CO – QATAR
    157'C' RING ROAD – DOHA QATAR
    TEL: +974 4315222
    FAX: +974 431 4222
    EMAIL: SHIPPING.DOHA@GACWORLD.COM
    PIC: RUSTIN MUTHUSAMY MOB: +974 5363570

CLAUSE 29:
AT DISCHARGE PORT:
CARGO TO BE DISCHARGE FREE OF EXPENSES TO THE VESSEL AT THE RATE OF 1,500 METRIC TONS PER
HATCH / PER WORKABLE HOOK PER WEATHER, WORKING DAY OF 24 CONSECUTIVE HOURS, FRIDAY AND/OR
LEGAL HOLIDAYS INCLUDED.



- 6 -



POOSHESH
PERSIA Co

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

NOR TO BE TENDERED DURING THE AGREED LAYCAN IN WRITING AND DURING OFFICE WORKING HRS (I, E.) 0800 – 1700 HRS SATURDAY TO THURSDAY WIFPON WIFPON WCCON. WIBON WIPON, WIFPON WCCON AND WIBON

CLAUSE 30:
LAYTIME AT DISCHARGE PORT COMMENCES TO COUNT AFTER VESSEL ARRIVED AND TENDERED WRITTEN / CABLED / TELEXED NOTICE OF READINESS ANYTIME.
I RECEIVERS / CHARTERERS CAN MANGE TO LOAD / DISCHARGE BEFORE LAYTIME COMMENCES, MASTER WILL ALLOW LOADING / DISCHARGING TO COMMENCE AND THE HALF ACTUAL TIME WORKED PRIOR COMMENCEMENT OF LAYTIME TO COUNT

IN CASE OF CONGESTION OR IF VESSEL IS NOT INSTRUCTED TO BERTH BY CHARTERERS / RECEIVERS / PORT AUTHORITIES, MASTER HAS THE RIGHT TO GIVE NOTICE OF READINESS IN WRITING FROM ANCHORAGE / USUAL WAITING PLACE, WHETHER IN PORT OR NOT, WHETHER IN BERTH OR NOT, WHETHER IN FREE PRATIQUE OR NOT WHETHER CUSTOMS CLEARED OR NOT, PROVIDED VESSEL NOT SUBSEQUENTLY DENIED FREE PRATIQUE

LAYTIME AT BOTH ENDS NON-REVERSIBLE.

CLAUSE 31:
IF THE VESSEL IS DETAINED LONGER THAN THE STIPULATED PERIOD OF LAYTIME AT LOAD / DISCHARGE PORTS, CHARTERERS WILL PAY DEMURRAGE AT THE RATE OF US$17 000 (UNITED STATES DOLLARS SIXTEEN THOUSAND) PER DAY OR PRO

SINCE AT BOTH ENDS DEMURRAGE AND DESPATCH CALCULATIONS TO BE BASED ON SUPPORTING DOCUMENT TO BE RECEIVED BY CHARTERERS OFFICE, THEN OWNERS ARE LIABLE TO DISPATCH A CLEAN AND CLEAR COPY SET OF SUPPORTING DOCUMENTS SUCH AS STATEMENT OF FACTS PLUS NOTICE OF READINESS DULY SIGNED AND STAMPED BY MASTER AND AGENTS AND CHARTERERS REPRESENTATIVE AND OR SHIPPERS / RECEIVERS AND RELEVANT TIME SHEETS TO CHARTERERS' OFFICE WITHIN MAX 7 DAYS UPON DEPARTURE THE VESSEL FROM THE LOAD OR DISCHARGE PORT.
DEMURRAGE IF ANY SHALL BE SETTLED DIRECTLY BETWEEN OWNERS AND CHARTERERS WITHIN 15 DAYS UPON COMPLITION OF DISCHARGING AND RECEIVING THE OWNERS TIME SHEET PLUS SUPPORTING DUCOMENTS

CLAUSE 32:
A. CARGO QUANTITY TO BE ASCERTAINED BY DRAFT SURVEY, AND SAME WILL BE THE BILLS OF LADING WEIGHT, BUT ANYHOW OWNERS WILL BE LIABLE FOR THE QUANTITY OF THE CARGO TIME USED FOR DRAFT SURVEY WILL NOT TO COUNT AS LAYTIME.
B. WHILE THE SURVEYOR IS TAKING DRAFT READINGS AND SOUNDINGS, MASTER IS NOT TO TAKE ON OR PUMP BALLAST AT LOAD AND DISCHARGE PORTS WITHOUT OBTAINING PERMISSION OF THE CHARTERERS, AND VESSEL IS NOT TO TAKE ON, RELEASE OR SWITCH FROM ONE TANK TO ANOTHER ANY BALLAST, FRESH WATER OR FUEL -GAS OIL.
C. VESSEL TO FURNISH A CERTIFIED CALIBRATION SCALE FOR ALL TANKS INCLUDING FOR AND AFT PEAKS AND DOUBLE BOTTOM TANKS AND DEEPTANKS, PLIMPSOLL MARKS AMIDSHIP AND DRAFT MARKS ON PORT AND STARBOARD SIDES BOW AND STERN TO BE CLEANLY CUT AND MARKED ON SHEEL PLATING, VESSEL TO FURNISH CAPACITY PLAN, DISPLACEMENT SCALE AND DEADWEIGHT SCALE AND SAME TO BE CERTIFIED BY MASTER AS TO CORRECTNESS AT TIME OF LOADING

CLAUSE 33:
CARGO TO BE EVENLY DISTRIBUTED THROUGHOUT THE VESSEL, COMPATIBLE WITH SEAWORTHY TRIMMED STOWED AND IN CO-OPERATION WITH MASTER / MATES, CHARTERERS / SHIPPERS / RECEIVERS TO LEAVE THE VESSEL IN SAFE / SEAWORTHY TRIM TO MASTER'S SATISFACTION, VESSEL TO BE ALWAYS LEFT IN SEAWORTHY TRIM TO MASTER'S SATISFACTION. LEVELING OR ANY OTHER SPECIAL, TRIMMING REQUIRED BY THE CAPTAIN SHALL BE IN ALL, CASES AT OWNERS' EXPENSE AND RISK UNLESS SAME IS A RESULT OF CHARTERERS / SHIPPERS / RECEIVERS NOT LEAVING VESSEL IN SAFE / SEAWORTHY TRIM TO MASTER'S



- 7 -



POOSHESH
PERSIA Co.

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

SATISFACTION IN WHICH CASE TO BE FOR CHARTERERS / SHIPPERS / RECEIVERS TIME RISK AND EXPENSE

CLAUSE 34:
ALL NAVIGATION TIME BETWEEN BERTH AND ANCHORAGE NOT TO COUNT AS LAYTIME AND EXPENSES FOR
SUCH MOVEMENT TO BE ON OWNERS' ACCOUNT

CLAUSE 35:
DELETED

CLAUSE 36:
FREIGHT US$ 19.50 (NINETEEN DOLLAR AND FIFTY CENTS) OR ITS EQUIVALENT IN UAE DIRHAM ON FREE IN/OUT
SPOT TRIMMING BASIS 1/1

FRT PAYMENT: 100 PERCENT FREIGHT LESS COM PAYABLE UPON COMPLETION OF LOADING AND ALWAYS BBB,
MARKED FRT PAYABLE AS PER C/P, ANY TIME LOST AT DISPORT WAITING FOR THE FREIGHT
REMITTANCE/RECEIVED IN OWNERS NOMINATED BANK A/C. TO BE COUNTED AS LAYTIME.

ORIGINAL BILLS TO BE WITH THE OWNERS PROTECTING AGENTS, WHO WILL ISSUE A COPY OF THE ORIG B/L TO
THE SHIPPERS TO REMIT THE FREIGHT, ONCE FRT, IN UAE DIRHAMS, IS RECEIVED BY THE OWNERS IN THEIR
NOMINATED BANK A/C. ORI BILS  FULL SET WILL BE RELEASED TO THE SHIPPERS

FREIGHT TO BE PAID TO:

CLAUSE 37:
IF SHIPPERS/RECEIVERS/CHARTERERS CAN MANAGE TO LOAD / DISCHARGE BEFORE LAYTIME COMMENCES,
MASTER WILL ALLOW LOADING/DISCHARGING TO COMMENCE AND HALF ACTUAL TIME WORKED PRIOR
COMMENCEMENT OF LAYTIME TO COUNT

CLAUSE 38:
I.S.M. CLAUSE
FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (I.S.M.) CODE IN
RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNERS
SHALL PROCURE THAT BOTH THE VESSEL AND "THE COMPANY" (AS DEFEND BY THE I.S.M. CODE) SHALL
COMPLY
WITH THE REQUIREMENTS OF THE I.S.M. CODE. UPON REQUEST, THE OWNERS SHALL PROVIDE A COPY OF THE
RELEVANT DOCUMENT OF COMPLIANCE (D.O.C.) AND THE SAFETY MANAGEMENT CERTIFICATE (S.M.C.) TO THE
CHARTERERS, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS CHARTER PARTY, LOSS,
DAMAGE, EXPENSE OR DELAY CAUSED BY THE FAILURE ON THE PART OF "THE COMPANY TO COMPLY WITH
THE I.S.M. CODE SHALL BE FOR THE OWNERS ACCOUNT

CLAUSE 39:
BILLS OF LADING TO BE ISSUED IN ACCORDANCE WITH HAUGE-VISBY RULES.
TYPE OF BILLS OF LADING ARE REVISED CONGEN BILL OF LADING FORMAT 1994.

CLAUSE 40:
ALL NEGOTIATIONS AND EVENTUAL FIXTURE TO BE KEPT PRIVATE AND CONFIDENTIAL

CLAUSE 41:
A-      THE OWNERS / DISPONENT OWNERS GUARANTEE THAT THE PERFORMING VESSEL UNDER THIS CHARTER
PARTY COMPLIES WITH THE FOLLOWING REQUIREMENTS:

B-      THE VESSEL IS TO LOAD / DISCHARGE THE INTENDED CARGO AT ALL ALLOCATED HATCHES SIMULTANEOUSLY
WITH ITS OWN GEARS  IF REQUESTED  THE ACTUAL LIFTING CAPACITY OF WHICH TO BE MIN 4X25 METRIC TONS



- 8 -



POOSHESH
PERSIA Co

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

SWL THROUGHOUT, PER HATCH. THE VESSELS GEARS HAVE A SWL LIFTING CAPACITY AS PER AFORESAID DISCRIPTION AND SUITABLE SPEED ARE ABLE TO SERVE ALL HOLDS SIMULTANEOUSLY AND HAVE ALL RELEVANT GEAR CERTIFICATES ON BOARD, VALID THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY HOWEVER WHILE WORKING WITH GRABS, VSL CRANES WILL HAVE ONLY 75 PCT OF THE DECLARED SWL.

OWNERS WILL PROVIDE GRABS ONLY AT DISCHARGE PORT LOAD PORT CHRTRS/SHIPPERS TO PROVIDE AT THEIR OWN COST AND TIME.

C-      FOR THIS SHIPMENT THE VESSEL SHALL BE FULLY DESCRIBED BY OWNERS / DISPONENT OWNERS IN HER NOMINATION, INDICATING ESTIMATED TIME OF ARRIVAL (ETA) AT LOADING PORT WITH THREE DAYS LAYCAN AND ESTIMATED TONNAGE TO BE LOADED

D-      THE VESSEL IS CLASSED TO LLOYD'S 100 A1 OR EQUIVALENT CLASS & NOTATION, WITH A CLASSIFICATION SOCIETY WHICH IS A MEMBER OF IACS AND VESSEL SHALL REMAIN SO CLASSED, THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY

E-      THE VESSEL IS FULLY P & I COVERED WITH A RECOGNIZED PROTECTION & INDEMNITY CLUB AND SHALL REMAIN SO THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY, AND ALL CALLS, INCLUDING SUPPLEMENTARY CALLS, IF ANY, ARE FULLY PAID TIP.

F-      THE VESSEL IS FULLY H&M INSURED AT A VALUE OF US$ 6 MILLION AND SHALL REMAIN SO THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY

G-      THE VESSEL S HOLDS/HATCHES ARE FREE OF ANY OBSTRUCTIONS/ BULKHEADS / STANCHIONS ETC. AND THE VESSEL IS TIGHT STAUNCH AND IN EVERY WAY SUITABLE TO LOAD SHIP AND DISCHARGE THE INTENDED CARGO.

VSL HAS PILLARS IN HOLDS HOWEVER, SUITABLE FOR LOADING/DISCHARGING IRON ORE AS FAR AS HER DESCRIPTION CAN BE

H-      THE VESSEL SHALL NOT CHANGE OWNERSHIP THROUGHOUT THE CURRENCY OF THIS CHARTER PARTY WITHOUT CHARTERERS WRITTEN CONSENT.

I-      IF AT ANY TIME DURING THE CURRENCY OF THIS CHARTER PARTY, VESSELS FAILS TO COMPLY WITH ANY OF THE AFOREMENTIONED REQUIREMENTS, THEN OWNERS SHALL BE HELD FULLY RESPONSIBLE FOR ALT COSTS AND CONSEQUENCES, WHATSOEVER OR HOWSOEVER ARISING INCLUDING ANY/ ALL CLAIMS FOR DAMAGES ORIGINATING FROM SHIPPERS / CHARTERERS / RECEIVERS.

A-      HEAD OWNERS : OCEAN VIEW SHIPMANAGEMENT MALTA
        OWNERS : ANGLOMARINE, UK
B-      DISPONENT OWNERS: TRANSBULK SHIPPING LLC  DUBAI
                        P.O BOX 111553 DUBAI
                        TEL.: 00 9714 3315160
                        FAX: 00 9714 3315170

C-      PERFORMING VSL: MV OCEAN FRONTIER

- VSL S DESCRIPTION

MV. OCEAN FRONTIER
TYPE: MULTIPURPOSE
FLAG: PANAMA / BUILT: 1981
DWAT: 22,034MTS
DRAFT SSW: 10.1118
LOA / BM: 178.0 MTRS / 23.0 MTRS
GRT / NRT: 16.260 / 6,347
GRAIN / BALE CAPACITY: 23500/23355 CBM



- 9 -


FOOSHESH
PERSIN Co

Additional Clauses to MV OCEAN FRONTIER
Charter Party dated 23rd July 2007

HOLDS  CARGO CAPACITY
           GRAIN(CBM/CFT)      BALE (CBM/CFT)
HO1    3 110/109,830         2,585/103,415
HO2    6,940/245,035         6,800/240,052
HO3    6 970/246 145         6,830/241,201
HO4    6 880/242,965         6 740/238,522
TOTAL  23 900/864,035        23,355/824 720

GEAR: 4X25 MTS SERVING ALL HOLDS
TYPE OF HATCHCOVERS:

-WEATHER HATCHCOVERS: 8 STEEL HATCHCOVERS FOLDING TYPE HYDRAULIC OPERATED

-TWEENDECK COVERS: 8 STEEL FOLDING TYPE FRW+AFT WITH STEEL PONTOON IN THE MIDDLE

SIZE (IN METERS):

        HATCH        TWEENDECK
NO1    12.85X5.78    NO TWEEN
NO2P   25.60X8 10    25.60X8 10
NO2S   25 60X8 10    25.60X8.10
NO3P   25.60X8 10    25.60X8.10
NO3S   25.60X8 10    25.60X8 10
NO4P   25.60X8 10    25.60X8 10
NO4S   25.60X8.10    25.60X8.10
OWNERS PROVIDE 4 GRABS AS PER ATTACHED SPEC

CLAUSE 42:
CARGO TO BE LOADED AS PER IMO REGULATIONS IN PARTICULAR BUT LIMITED TO BC CODE FOR THE LOADING OF IRON ORE

CLAUSE 43:
AT LOAD PORT IN CASE THE VESSEL IS INSTRUCTED TO SHIFT IN / OUT OF SAME BERTH THEN TO BE CONSIDERED AS DIFFERENT / SECOND BERTH ON CHARTERERS ACCOUNT / TIME.
AT DISCHARGE PORT IN CASE THE VESSEL IS INSTRUCTED TO SHIFT IN / OUT OF SAME BERTH FOR MORE THAN TWICE THEN TO BE CONSIDERED AS DIFFERENT / THIRD BERTH ON CHARTERERS ACCOUNT / TIME

CLAUSE 44:
THE VESSEL SHALL BE WARPED AS REQUIRED SUCH WARPING SHALL BE FOR OWNER'S ACCOUNT AND TIME SHALL NOT COUNT AS LAYTIME

CLAUSE 45:
"CLEAN ON BOARD" BILLS OF LADING TO BE ISSUED AGAINST CLEAN ON BOARD CARGO ONLY, HOWEVER, FOR MINOR REMARKS USUALLY APPLICABLE TO IRON ORE SHIPMENTS, "CLEAN ON BOARD" BILLS OF LADING TO BE ISSUED AGAINST L.O.I IN OWNERS P AND I CLUB WORDING ISSUE AND SIGNED BY CHARTERERS AND SHIPPERS ONLY.

CLAUSE 46:
LOAD PORT AGENT:
*Blue Gulf Shipping Agency*
*Unit # 24, 4th Flr, 2nd Block,*
*No. 40 Vanak Ave. Tehran 19915, Iran*
*Tel: +98 21 88799135 / 8879 853 Fax: 88884175*



- 10 -


POOSHESH
PERSIA Co

Exhibit 2

# TRANS – BULK SHIPPING L.L.C

Khalid Al Attar Tower
6th Floor 604,Sh Zayed Rd.
P.O.Box 111563 Dubai
United Arab Emirates

Tel: +971 4 3315160
Fax:+971 4 3315170

Email:tbulk@emirates.net.ae

Date: 11/09/2007                                    Inv No: 11/09/07/OCFT R-1/07

## DEMURRAGE INVOICE

M/S POOSHESH PERSIA CO
TEHRAN,IRAN.

MV.OCEAN FRONTIER C/P DTD 23/07/2007,B.ABBAS/MESAIEED

L/P DEMURRAGE AT B.ABBAS           =  62,994.45 USD
D/P DEMURRAGE AT MESSAIEED         =  66,075.69 USD

| TOTAL DEMURRAGE | = 129,070.14 USD |
|---|---|

(USD ONE HUNDRED TWENTY NINE THOUSAND SEVENTY AND CENTS
FOURTEEN ONLY)

KINDLY REMIT THE AMOUNT TO THE FOLLOWING NOMINATED BANK
ACCOUNT:

HABIB BANK AG ZURICH,
CORPORATE BRANCH,
P.O.BOX 1622, DUBAI,U.A.E

BENEFICIARY : TRANS BULK SHIPPING LLC
USD.ACCOUNT NO: 020102-20430-333-239622
SWIFT : HBZUAEAD

CORRESPONDING BANK : BANK OF NEWYORK.NEWYORK
SWIFT : IRVTUS3N
ACCOUNT NO .8033380748,OF HABIB BANK AG ZURICH

FOR TRANS BULK SHIPPING L.L.C



AUTHORIZED SIGNATORY

Exhibit 3

Transbulk shipping

| From: | Burooj Marine Services [burooj@emirates.net.ae] |
|---|---|
| Sent: | Thursday, August 16, 2007 11:35 AM |
| To: | Trans Bulk Shipping L.L.C |
| Subject: | Fw: MV OCEAN FRONTIER &#8211; BKG SWIFT OF BAL OF FRT |
| Attachments: | BKG SWIFT BAL FRT OCEAN FRONTIER.PDF |

786/110

MR.SHABU-MR HARNEET

GDDAY,

MV OCEAN FRONTIER
A/C PPC

RE BAL FRT PAYMENT

RCVD FWLNG FRM THE CHARTRS,
PLSE ACKN CNFRM RECEIPT OF BAL FRT ,THKS

QUOTE,

REF: PPC07/1234

DATE: 14-08-07

TO: CAPT

RE: MV OCEAN FRONTIER – BKG SWIFT OF BAL OF FRT

DEAR SIR,

MNY THANK FOR D.OWNS CO-OP IN REGARD TO FRT PAYMENT  WITH CHRTRS DUE
TO HOLIDAYS. ENCLOSED PLS FIND THE BANKING SWIFT FOR THE BALANCE FRT
SHOWING AED 37, 451 32 PAID TO D OWN' S NOMINATED A/C

PLS ACK RCPT OF WHOLE FRT PAYMENT (PAYMENTS VIA ITALY AND EDBI) BY RTRN

B RGRDS

M J.BASHARDOUST

SHPG DEPT MNGR.

POOSHESH PERSIA CO

11/24/2007

 **Habib Bank AG Zurich**
Corporate Branch
P.O.Box: 1622, Khalid Bin Walid Road, Dubai, U.A.E.
Phone: 971–4–3513777 Fax: 971–4–3522878
Telex: 46668 HBZCOR EM

M/s TRANSBULK SHIPPING LLC
PO Box 111563
Dubai

Please be adviced that we have transacted your account on 15–Aug–2007 as under –
Account: 2–1–2–20430–333–239622   Type: Call Deposits   Currency: United States Dollar

379,990.0

Transaction reference: 2–1–2–43/3(15–Aug–2007) Credited with
Particulars: TT  USD 380000.000 B/O /736.3637 SOCOTHERM S P A  STRADA
PELOSA N 171 36100 VICENZA

Please notify us immediately by telex or telephone in case of any descrepancy. if not this transaction
advice will be presumed to be in order

This transaction advice is computer generated and does not carry any signature